James D. Shannessy, Appellee, v. Walgreen Company, Appellant.

Gen. No. 43,146.

Opinion filed February 6, 1945. Released for publication February 20, 1945.

LORD, BISSELL & KADYK, of Chicago, for appellant; LEONARD F. MARTIN and GUY C. BALTZ, both of Chicago, of counsel.

BOYLE, MORRISSEY & WAGNER, of Chicago, for appellee; JOHN S. KAVANAUGH and CHARLES A. BOYLE, both of Chicago, of counsel.

MR. PRESIDING JUSTICE NIEMEYER delivered the opinion of the court.

Defendant appeals from a judgment for $6,000 entered against it in an action for injuries sustained by plaintiff in a store of the defendant as a result of an assault by the manager of the store.

The law governing the case was stated by this court in *Shein v. John R. Thompson Co.*, 225 Ill. App. 490, as follows: "We understand the rule to be that in order to make a master liable, it is necessary to show, first, that the tort-feasor was the servant of the defendant; second, that such relationship existed at the time of the injury; and third, that such relationship existed with respect to the particular transaction from which the tort arose. *Johnson v. Wm. Johnston Printing Co.*, 263 Ill. 236," and in the case of *Metzler v. Layton*, 373 Ill. 88, 91, cited by plaintiff, where the court said "the negligence of the servant is imputable to the master, if the relation existed at the time and in respect to the transaction out of which the injury arose."

The evidence is without conflict. Defendant offered no testimony as to the occurrence. Waugh, the manager of the store, was not in the employ of defendant at the time of the trial and was said to be in the Navy. The altercation between the manager and plaintiff occurred in the early morning between 3 and 4 o'clock; on the preceding evening plaintiff and his companion, Coffey, were at a public dance hall until shortly after midnight; they then went to a restaurant where they had something to eat and then to a bar where they played the 26 game and had about half a dozen bottles of beer each; they left the bar about 3:30 in the morning and went to defendant's store where they had some coffee and waited for a street car; as they were getting ready to leave, plaintiff went to the lavatory, and in his absence the manager said to Coffey, "I just as soon you didn't come in. Every time he comes in here he causes trouble. The last time he was in here he stole a hot water bottle or electric heating pad. If he comes in here again I will hit him with a baseball bat." Coffey insisted that the manager was wrong in making charges against the plaintiff, paid the bill and left with plaintiff immediately on the latter's return from the lavatory; when they got out on the street Coffey said to plaintiff, "That fellow doesn't like you very much. He accused you of stealing a hot water bottle or electric heating pad." Coffey testified that plaintiff started right back into the store again and that he followed plaintiff because he didn't want any trouble. Plaintiff testified that he did not go back to buy anything, but because of the remark that Coffey had told him about; that he wanted to verify it and went back for the purpose of straightening it out; when plaintiff re-entered the store the manager was arranging merchandise about 15 feet from the door; before plaintiff had said anything the manager said, "You get the hell out of here," and plaintiff replied, "This is a public store;" the manager came toward plaintiff, picked

up a bat and struck plaintiff three times, breaking his arm; Coffey stopped the fourth blow and, with plaintiff, left the store.

The controlling question is whether the relation of master and servant existed between defendant and its manager in respect to the occurrence out of which plaintiff's injury arose. Defendant concedes that the manager was charged with the duty of protecting the property of defendant entrusted to his care from theft or damage, but contends that this duty extended only to present theft or damage of the employer's property and not to the correction or redress of prior wrongs, and that in this case the manager was not acting within either the express or implied authority of his position in commenting on the alleged trouble previously caused by plaintiff and plaintiff's alleged theft of merchandise on a prior visit to the store, in threatening to hit plaintiff with a baseball bat if he again entered the store and in executing the threat.

The cases relied upon by plaintiff are cases in which the employee was attempting to protect the property of the employer from present injury or to recover property just stolen. In *Metzler v. Layton, supra,* the office manager of defendant had been placed in a closet by robbers seeking defendant's money and other property; on hearing the outer door close the manager emerged from the closet and, in immediate pursuit of the robbers, mistakenly shot the plaintiff. In *Central Motor Co. v. Gallo* (Tex. Civ. App.), 94 S. W. (2d) 821, the man in charge of defendant's repair department lost his temper and assaulted a customer during a discussion regarding work done on plaintiff's automobile and the rectifying of any work which might be found defective. In *Bearman v. Southern Bell Telephone & Telegraph Co.,* 17 La. App. 89, 134 So. 787, plaintiff and other boys had entered the garage of defendant, where the only employee on duty was engaged in the repair of a tire, and were wasting gasoline of

the defendant and interfering with and annoying the employee, who ordered the boys to leave and on refusal whipped the plaintiff. The court commented upon the fact that from the record it appeared the boy had never had any previous personal encounters with the defendant's employee and there was no ill feeling between them. In *Eldridge v. Black Canyon Irr. Dist.,* 55 Idaho 443, the assault complained of occurred while the superintendent of the district, charged with the duty of keeping a canal in repair and protecting it from damage, was discussing with plaintiff, an employee on an irrigated farm which bordered on the canal, the prevention of waste water flowing into the canal from the land on which plaintiff was employed.

In opposition to these cases defendant cites *Brown v. Boston Ice Co.,* 178 Mass. 108, and *Pruitt v. Watson,* 103 W. Va. 627. In the *Brown* case an employee of defendant, while engaged in delivering ice, punished certain children who had broken the handle of an ice ax. In holding that the defendant was not liable the court said: "The ground on which the plaintiffs contend that the defendant is liable for Sprague's acts in beating them with the handle of the ice ax is that, from what Sprague said at the time, the jury were warranted in finding that he punished them, in whole or in part, for the purpose of making it easier for him to deliver ice from the defendant's ice cart in the future, without an assistant, and with slight care of the tools; and therefore the case is brought within *Howe v. Newmarch,* 12 Allen 49. But in this case Sprague's attack on the boys was an act of punishment inflicted for a past injury to his master's property, and not in doing an act which he had to do if he performed the duty owed by him to his master. It is not within the scope of the authority of a servant to whose custody his master's property had been confided to undertake to secure it from future injury by committing the illegal act of inflicting personal chastisement on per-

sons who have done damage to it in the past.'' In the *Pruitt* case the plaintiff, a customer in defendant's store, had folded up some little dresses in a small package, put them under her arm and started towards the door; a clerk stopped her, brought her back and took possession of the goods and then turned her over to the store manager, reporting to him what had occurred; plaintiff escaped through the door but was pursued into the street by the manager, who held her by the arm and forced her back into the store, where she was detained until a police officer arrived who took her into custody and before a justice of the peace, where a formal complaint was made charging her with the theft of the goods. In reversing a judgment for the plaintiff the court pointed out that she complained only of the treatment inflicted by the manager and that there was no claim by her nor any evidence or contention that the manager ''or any other employee was pursuing her in an effort to recover other goods which she was supposed to have concealed about her person. All seem to agree that she had surrendered all the goods which she had been seen to lift from the counters or tables in the store; and all the witnesses examined on this subject, and the concurrent facts proven, go to show that the sole object of her detention was to hold her for prosecution and the vindication of the law.'' The court said: ''Agents intrusted with the possession of their master's property and responsible for its safekeeping have the implied power to do anything reasonably necessary to that end, and for any wrong done by them in that behalf, the master is liable to the injured party; but that is as far as their authority or his liability goes, unless he be present and approve their wrongdoing. . . . But many decisions, some of which are cited and relied on by plaintiff in error, say in consonance with our own, that when an employee, to protect the property of his employer, makes an arrest or assault upon another, not

in an effort to recover or protect his possession, he acts without the scope of his employment, and his principal is not liable for his unauthorized conduct. . . ."

Plaintiff did not return to defendant's store with the intent of becoming a customer or for any purpose connected with defendant's business. His return was solely for the purpose of adjusting a difference between himself and the manager of the store arising out of the manager's charge that the plaintiff on a prior occasion had stolen a hot water bottle or electric heating pad. When plaintiff returned to the store the manager, without waiting for any announcement or indication of the purpose of plaintiff's return, struck the plaintiff with a baseball bat. The manager of the store, either through fear of personal violence at the hands of plaintiff (a younger and larger man than the manager) because of the charge made against him, or in resentment because of the prior alleged misconduct of the plaintiff when in defendant's store or as punishment therefor, made the assault complained of. In any event, he was not then engaged in protecting defendant's property from immediate theft or damage, or in recovering property which had just been stolen from defendant, as in the case of *Metzler v. Layton*, relied upon by plaintiff. The case is more nearly analogous to *Lynch v. Florida Cent. & P. R. Co.*, 113 Ga. 1105, and *Georgia R. & Banking Co. v. Richmond*, 98 Ga. 495. In the latter case the plaintiff had an argument with the station agent relative to the checking of his trunk on a passenger train about to leave; the trunk was not checked, and some time after the train had departed, plaintiff, who had been obliged to remain over until the following day, returned to the station to arrange for his transportation on a later train, and in further discussion with the agent relative to his failure to check the trunk when the first request was made, was assaulted by him. The reviewing court,

after discussing the rights of plaintiff if he had returned to the station to transact business as a prospective passenger, said (p. 502) : "If, however, the truth be that Richmond went to the station, not really for the purpose of transacting any legitimate business with the agent, but simply to upbraid or reproach him because of a real or supposed grievance occurring at an earlier hour of the day and a difficulty then arose between these men, it was one in which the company had no concern whatever, and should be treated as any other fight occurring between ordinary citizens."

The trial court should have directed a verdict for defendant or entered judgment for defendant notwithstanding the verdict. The judgment is reversed.

*Reversed.*

MATCHETT and O'CONNOR, JJ., concur.