WAYNE STARR, as Ex'r of the Estate of Clarence Starr, Plaintiff-Appellee, v. ELIZABETH ANN LEININGER, Defendant (Moline Nursing and Rehabilitation Center, Defendant-Appellant).

Third District No. 3—89—0603

Opinion filed May 22, 1990.

Daniel Bonnett, of Lousberg, Kopp & Bonnett, of Rock Island, for appellant.

Francis Van Hooreweghe, of Van Hooreweghe, Fackel & Thuline, of Moline, for appellee.

JUSTICE GORMAN delivered the opinion of the court:

An employee of the Moline Nursing and Rehabilitation Center (MNRC) stole a ring valued at $2,500 from a resident at the facility. Plaintiff Wayne Starr, as executor of the estate of Clarence Starr,

brought suit against MNRC to recover the amount of the ring. The trial court entered judgment in favor of the plaintiff and the defendant appeals. We reverse.

MNRC operates a long-term residential, extended-care nursing facility in Moline, Illinois. On November 21, 1988, Clarence Starr was admitted to MNRC by his wife. At the time he was admitted to MNRC, Mr. Starr was incoherent. Debra Slater, admissions director for MNRC, admitted Mr. Starr. Slater testified that she reviewed the rules and regulations of MNRC with Mrs. Starr. Slater noticed a diamond ring on Mr. Starr's finger. Slater informed Mrs. Starr that the rules and regulations of MNRC warned against keeping valuables, particularly jewelry, in a resident's room. It was Slater's opinion that Mrs. Starr understood the rules and regulations and the warning about the jewelry.

The ring disappeared sometime between 2 p.m. on November 23, 1988, and 8 p.m. November 24, 1988. After Mrs. Starr reported the ring missing to the MNRC administration, an investigation into its disappearance was conducted. The investigation proved fruitless.

Subsequently, administrators at MNRC were tipped off that Elizabeth Leininger, a nurse's aide at MNRC, had stolen the ring. This information was communicated to the Moline police department, and MNRC fully cooperated with the police in their investigation. Leininger was subsequently arrested for the theft of the ring and pleaded guilty. The ring was never recovered and Leininger was ordered to make restitution in the amount of $2,500.

Mark Leafgreen, administrator at MNRC, testified that Leininger was hired as a certified nurse's aide. As part of the hiring process, MNRC contacted at least one of Leininger's previous employers listed on the job application for purposes of obtaining a reference.

At trial, the plaintiff argued that the facility was liable for property damage under the theory of *respondeat superior* and for negligent hiring practices. Additionally, the plaintiff argued that MNRC violated certain provisions of the Nursing Home Care Reform Act of 1979 (the Act) (Ill. Rev. Stat. 1987, ch. 111½, par. 4151 *et seq.*). The trial court held for the plaintiff and the defendant appeals.

The first issue is whether MNRC is liable for damages sustained by the plaintiff as a result of a theft committed by one of its employees.

Under the doctrine of *respondeat superior*, an employer may be liable for the negligent, wilful, malicious or even criminal acts of its employees when such acts are committed in the course of employment and in furtherance of the business of the employer. However,

the employer is not liable to an injured third party where the acts complained of thereby were committed solely for the benefit of the employee. *Webb v. Jewel Cos.* (1985), 137 Ill. App. 3d 1004, 1006, 485 N.E.2d 409.

■ In the case before us, the theft of the ring was not in furtherance of the business of the employer. Additionally, the employer did not benefit from the theft. Accordingly, we are of the opinion that MNRC cannot be held liable under *respondeat superior* for Leininger's act.

The second issue questions whether the Act imposes strict liability upon owners and operators of nursing homes for property damage sustained by a patient resulting from a theft committed by a nursing home's employees. We conclude that it does not.

■ Section 3—601 of the Act provides that "[t]he owner and licensee are liable to a resident for any intentional or negligent act or omission of their agents or employees which injures the resident." (Ill. Rev. Stat. 1987, ch. 111½, par. 4153—601.) Interpreting the word "injures" broadly, the plaintiff contends that Clarence Starr was injured when his personal property was stolen by the defendant's employee and therefore MNRC is liable. The plaintiff is unable to cite any cases that have interpreted this portion of the Act in such a manner, and our research has failed to uncover authority to support such an interpretation. We reject the plaintiff's interpretation of the Act and hold that "injures" refers to personal injuries suffered by a resident.

The General Assembly enacted the Act amid concern over reports of "inadequate, improper and degrading treatment of patients in nursing homes." (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 358, 489 N.E.2d 1374, quoting Senate Debates, 81st Ill. Gen. Assem., May 14, 1979, at 184 (statement of Senator Karl Berning).) The primary purpose of the Act is to provide a nursing home resident with certain rights. Ill. Rev. Stat. 1987, ch. 111½, pars. 4152—101 through 4152—113.

Section 2—103 is entitled "Personal property." This section provides, in pertinent part:

> "The facility shall provide adequate storage space for the personal property of the resident. The facility shall provide a means of safeguarding small items of value for its residents in their rooms or in any other part of the facility so long as the residents have daily access to such valuables. The facility shall develop procedures for investigating complaints concerning theft of residents' property and shall promptly investigate all

such complaints." Ill. Rev. Stat. 1987, ch. 111½, par. 4152—103.

MNRC complied with the Act by providing a place for residents to store personal property and promptly investigated the complaint when the ring was discovered missing. We are of the opinion that the legislature did not intend to make nursing homes insurers of their residents' personal property.

The decision of the circuit court of Rock Island is reversed.

Reversed.

HEIPLE, P.J., and SCOTT, J., concur.